**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-666-REB-CBS

UNITED STATES OF AMERICA, ex rel. DALE TODD,

    Plaintiffs,

v.

FIDELITY NATIONAL FINANCIAL, INC.,
FIDELITY NATIONAL TITLE INSURANCE COMPANY,
CHICAGO TITLE INSURANCE COMPANY,
SERVICELINK, INC., and
SERVICELINK, LLC,

    Defendants.

---

## ORDER DENYING MOTIONS TO EXCLUDE EXPERT TESTIMONY

---

**Blackburn, J.**

This matter is before me on the following: (1) the **Motion To Exclude Expert Testimony of Erin Toll Under Fed. R. Evid. 702** [#221][1] filed March 18, 2015; and (2) **Plaintiff Dale Todd's Motion To Exclude the Expert Witness Testimony of Robert Edwards** [#180] filed February 23, 2015.  The parties filed responses [#192 & #194][2] and replies [#204 & #205] addressing the motions.  I deny the motions.

---

[1] "[#221]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] The docket number of the motion concerning Erin Toll is higher than the docket numbers of the response and reply because a substituted motion was filed to correct errors in the motion as filed initially [#178].

## I.  STANDARD OF REVIEW

The parties seek to exclude the testimony of two expert witnesses.  Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702.  As interpreted by the Supreme Court, Rule 702 requires that an expert's testimony be both reliable and relevant.  ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579, 589-92 (1993); ***Truck Insurance Exchange v. MagneTek, Inc.,*** 360 F.3d 1206, 1210 (10th Cir. 2004).  The Supreme Court has described the court's role in weighing expert opinions against these standards as that of a "gatekeeper."  ***See Kumho Tire Company, Ltd. v. Carmichael***, 526 U.S. 137, 147 (1999).  Generally, "rejection of expert testimony is the exception rather than the rule." ***United States v. Nacchio***, 519 F.3d 1140, 1154 (10th Cir. 2008), *vacated in part on rehearing en banc*, 555 F.3d 1234 (10th Cir. 2009); FED.R.EVID. 702, 2000 Advisory Comm.'s Notes.

## II.  BACKGROUND

The claim at issue in this case is a retaliation claim under the False Claims Act (FCA).  The plaintiff, Dale Todd, alleges that the defendants, which are and were the employer of Mr. Todd, imposed negative and adverse employment actions against Mr. Todd in retaliation for his investigation and initiation of claims under the FCA.  Title 31 United States Code section 3730(h), a part of the FCA, prohibits such retaliation.

Defendants, Fidelity National Title Insurance Company and Chicago Title Insurance Company, are subsidiaries of defendant, Fidelity National Financial, Inc.  The two Service Link defendants, Service Link, Inc. and Service Link, LLC (collectively Service Link), are subsidiaries of defendant, Chicago Title Insurance Company. Service Link provides title work and title insurance that is issued in the name of Chicago Title. As early as 2006, Service Link and First American Title Insurance successfully bid to provide real estate and title services to the Federal Home Loan Mortgage Corporation (Freddie Mac).  The defendants then contracted with Freddie Mac to provide title services, including title searches, that comply with title industry standards and with applicable law in connection with so-called REO properties sold by Freddie Mac to the public.[3]

Title companies perform title searches prior to issuing a title commitment, which represents the company's agreement to insure the property and reflects all the defects to a title that have been detected during the title search.  A title insurance policy, or owner's policy, is issued subsequent to a title commitment.  Certain defects in title, such

---

[3] Freddie Mac acquires residential "real estate owned" (REO) properties when a mortgage becomes delinquent and subject to foreclosure.  Freddie Mac then resells those properties to the public.

as outstanding tax liability, are referred to as "requirements," because the title company will not issue a policy until the defect is cured. Other defects are known as "exceptions," indicating that the policy will be issued, but coverage will not extend to those exceptions. The title insurance policy reimburses the buyer of a property, the owner, for any damages arising out of defects in title that are not expressly excepted.

The plaintiff, Dale Todd, has worked for defendant Fidelity National Title since 2005. He began working with Service Link in 2007. Mr. Todd became aware that Service Link was receiving phone calls from real estate agents who represented buyers in Service Link transactions. These agents inquired about covenants, conditions, and restrictions (CCRs) they knew existed in certain subdivisions but that were missing from Service Link's title searches. After some investigation, Mr. Todd discovered that Service Link never included CCRs in its title commitments. This prompted Mr. Todd to review closed Service Link files for missing exceptions and compare Service Link title commitments to commitments he generated using Fidelity National Title's access to a property records databank known as SKLD. Mr. Todd discovered that the majority of Service Link's title commitments omitted property-specific exceptions.

Mr. Todd claims the defendants have violated the FCA since 2006 by charging Freddie Mac for title commitments that rely on deficient title searches. Repeatedly, Mr. Todd reported his concerns to various officials of the defendant companies, but, to the knowledge of Mr. Todd, nothing was done to resolve the problem. Mr. Todd alleges that the defendants retaliated against him for investigating and pursuing his False Claims Act claims.

### III.  EXPERT WITNESSES

### A.  ERIN TOLL

Mr. Todd has designated Erin Toll, Esq. as an expert witness.  Ms. Toll will testify as an expert in the fields of title insurance, title searches, and title commitments.  Ms. Toll will testify to the following opinions: (a) ServiceLink provided substandard title services to Freddie Mac; (b) the services provided by ServiceLink to Freddie Mac were inexpensive services for which ServiceLink charged inflated fees; (c) Freddie Mac was the entity or party that paid for the title services provided by ServiceLink; and (d) ServiceLink failed to perform as it agreed under the contract(s) with Freddie Mac and in conformance with applicable title industry standards. Ms. Toll will also testify regarding the adequacy of ServiceLink's title searches and commitments, and whether those searches and commitments met industry standards and requirements.  Ms. Toll will testify regarding whether the information known to Dale Todd would lead an individual in the title industry to believe that substandard or inadequate services were being provided by ServiceLink to Freddie Mac.

The defendants challenge the admissibility of the testimony of Ms. Toll on several fronts.  First, the defendants contend Ms. Toll does not cite to any industry standards to support her opinions.  I disagree.  In her report, Ms. Toll [#XXXXXX] cites numerous industry standards applicable to the title industry in Colorado.

Second, the defendants contend the opinions of Ms. Toll concerning compliance, *vel non*, with Colorado Law and Freddie Mac contracts are improper legal opinions.  It is "the court's duty to set forth the law" applicable to the facts presented at trial.  **Specht v. Jensen**, 853 F.2d 805, 808 (10th Cir. 1988) (en banc), **cert. denied**, 488 U.S. 1008

(1989).  Generally, it is improper for an expert witness to opine about what law is applicable to a case on trial.

> (A)n expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function.  However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed.  In no instance can a witness be permitted to define the law of the case.

*Id.* at 809-10.  In ***Specht***, the court gave examples of proper attorney expert testimony. In the proper context, an expert may testify that a certain weapon must be registered with the Bureau of Alcohol, Tobacco, and Firearms or that a failure to report funds received for the sale of blood plasma constituted income tax evasion.  *Id*. at 809.

The United States Court of Appeals for the Tenth Circuit examined a similar issue in ***MCC Management of Naples, Inc. v. International Bancshares Corp.***, 468 Fed.Appx. 816, 822 (10th Cir. 2012).  There, an expert witness testified about the common methodology tax lawyers use when interpreting certain phrases, including a key phrase at issue in the contract that was the basis of the claims of the plaintiff.  The court found this testimony to be helpful to the lay jury.  "(I)ntricate arrangements and technical tax jargon were illuminated by his experience with FDIC-bank agreements and knowledge of industry custom, tax law, and authorities in the field." ***Id***.  The expert testified that,

> in his opinion, it was reasonable to conclude that the agreement was drafted in a very broad manner, a conclusion touching the very heart of this dispute, but expert opinion is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.  To justify exclusion we require something more peremptory. [The expert] set out his views in detail sufficient to allow acceptance or rejection by the jury.

*Id*.  An "expert can *refer* to the law in expressing his opinion, but he may not tell the jury

6

what legal standards must guide their verdict." *Id*.

In this case, the standards of the title industry are relevant to a determination of whether the investigation and FCA claims of Mr. Todd had a reasonable basis. At trial the jury will not be asked to determine if the defendants violated or did not violate the standards and contract provisions about which Ms. Toll will testify. Rather, the jury will be asked to determine if Mr. Todd, based on his knowledge of the actions of the defendants, was reasonable in investigating suspected violations of those standards which tended to show that Freddie Mac was being over-charged for sub-standard title services. Expert testimony on those issues is far from testimony which will direct the jury's understanding of the legal standards applicable to the retaliation claim of Mr. Todd. Thus, under the standards enunciated in *Specht* and its progeny, I conclude that the testimony of Ms. Toll is admissible.

Third, the defendants contend the opinions of Ms. Toll are not based on reliable principles and methods. The defendants attack a short-hand phrase Ms. Toll has used to describe the standards applicable to title searches. As noted by the plaintiff, Ms. Toll has explained the more detailed standards which underlay this phrase. Those more detailed standards sufficiently undergird the principles and methods used by Ms. Toll. In addition, the defendants contend no reliable principles and methods were applied in a comparison by Ms. Toll of a ServiceLink title commitment with a commitment produced by a different title company, LTGC. The defendants argue there is no basis to conclude that LTGC provides a relevant standard of comparison. As Mr. Todd notes, Ms. Toll and other witnesses in this case have testified that LTGC is a large and reputable title company that sets the industry standard for title services. This provides a

reasonably reliable standard of comparison and permits reliable application of principles and methods.

Fourth, the defendants contend the opinions of Ms. Toll about the charges of ServiceLink and the scope and manner of ServiceLink title searches are not based on sufficient facts and data. The defendants contend that Ms. Toll agrees that the charge for a title search can be included in the overall title insurance premium and, if that is done, it is difficult to determine how much is being paid for the title search. This may be a valid criticism of some opinions of Ms. Toll, but it does not demonstrate that her opinion on this point lacks sufficient facts and data.

The defendants contend also that the opinion of Ms. Toll that the title searches of ServiceLink sere inadequate in scope and manner is not based on sufficient facts and data. Her review is based on a review of six title commitments out of hundreds or thousands of commitments prepared by ServiceLink. Of course, one might argue that her sample of six is too small to be fully informative. However, in the context of all of the information considered by Ms. Todd, there is no basis to conclude that her analysis of this sample of six necessarily, along with the other information considered, does not provide a reasonably sufficient factual basis for her opinions.

Finally, I reject the contention of the defendants that the opinions of Ms. Toll are not relevant to this case. As noted previously, the standards of the title industry and the application of those standards by ServiceLink are relevant to a determination of whether the investigation and FCA claims of Mr. Todd had a reasonable basis. The opinions of Ms. Toll address these issues and thus those opinions are relevant.

## B. ROBERT EDWARDS

The defendants have designated Robert Edwards as a rebuttal expert who will respond to the opinions of Ms. Toll. Generally, and like Ms. Toll, Mr. Edwards expresses opinions about title commitments, title insurance policies, and the applicable legal and industry standards.

Mr. Todd contends several of the opinions of Mr. Edwards are not admissible under Rule 702 because those opinions are based on unreliable principles. Generally, the opinions to which Mr. Todd objects on this basis are opinions about what precisely Colorado statute and regulations require in the context of title insurance. Viewed in the context of the report of Mr. Edwards [#180-2], I find and conclude that the challenged opinions of Mr. Edwards reflect reliance on reasonably reliable, though also debatable, principles.

Mr. Todd contends also that some opinions of Mr. Edwards are not relevant because the perspective of Mr. Edwards is that of a long-time lawyer for title insurance underwriters while the relevant perspective of Mr. Todd was that was that of a salesman with significant title industry experience. These two perspectives do not differ so greatly that the differences render the opinions of Mr. Edwards irrelevant. Stated differently, there is sufficient commonality between the two perspectives to make the opinions of Mr. Edwards relevant and potentially helpful to the trier of fact.

Next, Mr. Todd contends the opinions of Mr. Edwards invade the province of the jury on issues of credibility and issues of the weight to be accorded to certain evidence. Mr. Todd says Mr. Edwards questions the adequacy of the experience and qualifications of Ms. Toll and the sufficiency of the data on which Mr. Todd and Ms. Toll

relied. This type of critical analysis of the opinions and conclusions of others often are the subject of conflicting expert opinions and expert opinions on the analysis of a lay witness. As stated in the report of Mr. Edwards [#180-2], his opinions and criticisms of the analyses of Ms. Toll and Mr. Todd do not invade the province of the jury. Rather, they provide a counterpoint to the opinions of Ms. Toll and the testimony of Mr. Todd, which counterpoints likely will aid the jury in making an independent evaluation of credibility and the weight to be accorded the evidence in this case.

In the view of Mr. Todd, the discussion of Mr. Edwards about title abstracts goes outside the bounds of the opinions of Ms. Toll. Thus, Mr. Todd contends this part of the testimony of Mr. Edwards is not rebuttal expert opinion. Mr. Edwards discusses in his report the difference between title abstracts and title commitments. He opines that Ms. Toll appears to confuse title commitments with abstracts of title. This opinion evidence fairly challenges and rebuts the opinion evidence proffered by Ms. Toll and is well within the bounds of rebuttal.

### IV.  CONCLUSION & ORDERS

The challenges of the parties to the opinion testimony of Ms. Toll and Mr. Edwards raise issues that essentially implicate the weight to be accorded their testimony and not to the admissibility of their opinion testimony. Therefore, the motions to exclude opinion testimony of Ms. Toll and Mr. Edwards are denied.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion To Exclude Expert Testimony of Erin Toll Under Fed. R. Evid. 702** [#221] filed March 18, 2015, is denied;

2. That **Plaintiff Dale Todd's Motion To Exclude the Expert Witness**

**Testimony of Robert Edwards** [#180] filed February 23, 2015, is denied; and

    3.  That the **Motion To Exclude Expert Testimony of Erin Toll Under Fed. R. Evid. 702** [#178] filed February 23, 2015, which motion was replaced by the motion docketed as [#221], is denied as moot.

Dated March 19, 2015, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge